Here ye, here ye, here ye, this Honorable Appellate Court of the Second District is back in session pursuing to adjournment. The Honorable Captain and his team of presiding. Thank you, please be seated. Your Honor, the fourth case of the morning, call 213-1328 C. Szabo Contracting, Inc v. Loring Construction Company. On behalf of the applicants, Mr. Pedro Cervantes. On behalf of the athlete, Ms. Lauren P. Parks. Morning, Counsel. Mr. Cervantes. Morning, Judges. May it please the Court, Pedro Cervantes on behalf of the appellant, Loring Construction Company. And as clarified in my reply brief, I'm only seeking review of the trial court decision after a trial on the merits and not on the summary judgment decision. So, Your Honors, the issue that I framed in my briefs is what the standard is when there's a plaintiff that is in privy to the contract with one party, but seeks equitable relief in the form of unjust enrichments against a party that was not privy in for the same work the contract covered. And based on our arguments, we feel that the trial court, after the trial on the merits, has fared in applying a too general of a standard versus a more strict, but what I would say would be a medium standard. I know the Court asked us to review various cases from other jurisdictions as well as various sections of the restatement. Right, and I was going to ask you, do you believe that either of the sections of the restatement, Section 110 or Section 25, is instructive or helpful in this case and supports your position? And if so, why? Your Honor, I do believe they are instructive, and I believe that, if taken in context, not the case law, they do support my position. I believe that Section 110 is sort of the general rule that sets forth that just the fact, if a party is in privy with one party, the fact that the party they are in privy with did not perform does not automatically give that plaintiff the right to proceed. So we could say it another way besides privy. The general rule is that a quasi-contract relief is not available in the face of an express contract. Correct, Your Honor. Yes. That is the general rule. And to the extent that my reading of Section 25 is basically built off of Section 110 and sort of expands and provides more detailed guidance on when. And certain exceptions, right? Yes, Your Honor. When you can have an exception to that rule. Yes, Your Honor. And do you feel any of the exceptions apply here that relate to payment and who's paid who or not paid for what? And, Your Honor, I do. I recognize the issue that you asked us to focus on in the noticeable argument to the extent that you asked us to question the question of whether or not a quasi-contract theory can be pursued where the contractor, in this case, did not pay anyone. I think that is a general standard, but I think that there's more to it than just did they not pay. Certainly, there are circumstances where a contractor has the valid legal right not to pay a general contractor. Perhaps they did not perform the contract fully. There were defects, et cetera. And that does not necessarily mean that the burden of paying the sub-subcontractor should fall on the contractor if the general contractor did not fully perform their obligations. Or to the extent that wasn't the case, right? There was full performance and for the price bargained for in the first place, correct? That was defined in the trial court. I think there are some mitigating circumstances in this situation. One of the cases I saw that did discuss whether or not a contractor does not pay anyone is the case from Florida where it was Congress partnership, 8098 LTD partnership, and to the extent that the court would apply that standard, I think it's very important to note that there are two requirements. Not only that the contractor did not pay anyone, but that the plaintiff, in this case a sub-subcontractor, exhausted their remedies against the contractor. And in this case, that did not happen. The contractor was JLA Construction. And so if the court would apply that standard, I would ask or argue that they should also require that the sub-subcontractor pursue all their remedies. There was testimony. And so when you say exhaust, meaning they should have sued JLA? JLA Construction. We thought about that as well. And I think that's a question we're going to be asking your opponents is why they didn't sue JLA as opposed to your client. But what does that mean? Were they required to do that? Excuse me. Were they required? Well, that would be my argument. The sole standard is if the general contractor did not pay anyone, which I think is too broad of a standard. But if that were the sole standard that the court is considering, I would argue that based on the Congress partnership 8098 case, which is the case that sort of fleshed that issue out more, they also require that there be full. We should apply that case and read the condition into it. But let me ask you this, though. What about just a general argument? Somebody looks at this and goes, wait a minute. Your client got a tremendous windfall here if they don't pay anybody. Obviously, work was done. It was performed. And your client doesn't pay anybody for it. They were paid fully. Isn't that a windfall? It's not a windfall under the circumstances which I don't think the trial court fully considered. And I know the court asked not to discuss too much of the procedural history. But I think there is a relevant part of the procedural history, which was when we filed two motions to dismiss against JLA Construction Inc. And, in fact, the court granted our first motion to dismiss based on the fact that the court believed that they did not set forth that they had not assigned a contract fully to JLA and Sons. And then when I filed a second motion to dismiss, they voluntarily dismissed all claims on behalf of JLA Construction Inc. So, therefore, one can imply that there was a reason why they didn't pursue because my client didn't necessarily have the legal obligation to pay JLA Construction Inc. And that's why I think the procedural history in that sense is important to that consideration. Let's talk about the exceptions. You know, you have to have an express contract and it's tough to bring a quasi-criminal or quasi-contract claim. But there are some exceptions, correct? I believe that the case law that you asked us to review and the Illinois case law is not necessarily – there is no clear-cut, lack-of-better standard at this point. It doesn't appear that there is. Certainly, the position we took was that under the Hayes Mechanical and Coast Aviation case is that you look at the conduct of the, in this case, contractor. And it was our position that they have to take actions that would either induce or promise payment to the subcontractor, in this case. Entice them to perform or give them an expectation of payment. Let's talk about the first exception first, where they enticed them to perform. Didn't Lord have some discussions with Zago and come out to the site, kind of give him the impression that he knew he was doing the work? Well, Your Honor, there is testimony about a meeting in approximately March 20th of 2013 or so – sorry, 2007. And to that extent, it's our position based on the facts, on the circumstances that Mr. Zago, Carl Zago, was wearing his hat in theory of the JLA construction at that point because they had not yet contracted, in this case, able to contract him to perform any of the work. But to the extent that you would apply that standard, I would also look at the case – ask that you review the case of or consider the case of Mike Lynn and Company, where, yes, they did consider at what point did the general contractor motivate the, in this case, sub-subcontractor to perform the work and what point did they – did the sub-subcontractor have a reasonable belief that they would be paid by the contractor? But I would also say that if that standard is applied and the court believes – and this court believes that the trial court applied that standard, which I don't necessarily believe was the case, but if this court does believe that, then I'd also say that this would still need to be remanded so that the trial court can determine at what point did they have a reasonable belief – at what point did my client take action that made them believe that they had a reasonable expectation of payment? There was that meeting.  No, I understand. Well, I'm saying if – that it was still – it should reverse to the extent that if the court believes that she did – the court applied the standard of at what point did they cause the sub-subcontractor to reasonably believe that they would expect payment. It did happen – according to the trial court, it happened at that meeting. The question – based on my – if you look at Exhibit 16 of the trial court plaintiff's exhibit, there was work completed prior to March 20th, which is around the time that that meeting occurred. So I think that the – if that's going to be the standard, that it need to be – it would need to be remanded to the extent that the court would need to consider under the facts at what point did they believe that they would be paid. And then prior to that, as in Mike Glenn and Company versus Hyde Brazil Restaurants, the court in that matter said, well, prior to that point, any work that had been done, the sub-subcontractor was not to be compensated for that work. Who's to be compensated then? Under this decision of Mike Glenn and Company, it indicates that – well, again, in that case, they did exhaust the remedies against the contractor, and the court doesn't go into the discussion as to – it just said that they would not have to pay the $5,000 of work prior to the point that the court believed that they had motivated the sub-contractor to. So would they pay JLA or would they give the money back to the hurting state of Illinois? Well, Your Honor, at this point, again, I think that's the missing factor here. Unfortunately, the client – the sub-subcontractor in this case did not pursue the remedies against JLA Construction or else we would have found out that there's a reason why my client did not pay JLA Construction. What's the relationship between Zava and JLA Construction? Well, they're – JLA and Construction Inc. or JLA and Sons? Either any of them. Okay, so it's not necessarily fully expressed in the trial testimony, but JLA and Sons was an MBE company as set forth in the facts. C. Zavo, Carl Zavo, Frank Zavo, various Zavo entities were working for JLA and Sons. That's our position. It's our position that they created an entity named JLA Construction Inc. and attempted – again, it's not part of this record, but they started entering contracts in that name by a client. At one point, JLA and Sons found that out. Litigation began, which is not relevant to this case, but it went on. So that – and then C. Zavo then is – so the relationship between C. Zavo Contracting and JLA Construction Inc. is yes, there are some underlying individuals that are the same people. There's some connection. Yes. Well, let me ask you, did they ultimately – did they reach – they went out of business? One of them went out of business? Dissolved the corporation or no? JLA. I don't know if there was testimony on that, but I'm not sure if they – my understanding is that at least for a period of time, they were still in good standing because, again, it's not part of the record. They could be sued or – And there were various other activities that they – well, again – Let's try to figure out why they didn't get sued, and that would be a reason, but – Well, and also it's important that there was testimony that both JLA Construction – well, and C. Zavo both had their – they made a claim – they did not make a claim on the bond. It was a public bond. They did each file a public moving – they failed to pursue those, and they didn't sue JLA Construction, which I know there is a relationship, but is that they're – as we know in Illinois law, they're treated as different individuals. They could have pursued – they could have – some cases that you asked me, I really had consent judgments. They didn't do that. Some cases where they sued, but the entity went bankrupt. That didn't happen here. So, again, there's – I know it wasn't necessarily part of the record because they chose not to pursue the claims by JLA Construction for our position as a valid reason because they didn't have a valid claim, but, unfortunately, it wasn't able to get fleshed out. Well, let's talk about another independent basis that we could apply. I mean, we're talking about the enticement, the inducement. Okay, maybe that's a little bit unclear. What about the doctrine of unjust enrichment? I mean, very simply, they got a benefit here. They owed the money, the work was performed. They didn't pay anybody. Doesn't that constitute, under the law, unjust enrichment to your property? And, Your Honor, I think that that is the issue, is that why would there be an exception to the general rule if it was simply just going back to applying the basic standard of unjust enrichment? And I think under the Hays Mechanical and Midcoast Aviation, which are – one is the first district to appeal a court to Hays Mechanical, and then Midcoast Aviation is a Seventh Circuit but was relied on by Hays Mechanical, it does say the general rule is, as was indicated by the court earlier, and then they went and did the exceptions. And I think if you just want to go down unjust enrichment, you wouldn't need to consider whether or not there was a privity of contract between anybody. You just say no. Right. But that's what I'm asking. No, and I'm saying that's not necessarily what the cases are intending, the courts are intending, because or else there wouldn't be this development of the restitution of Section 625, restatement third, Section 110, restatement first. So obviously there is some consideration in the fact that you have to take into account that there was this privity of contract or a specific contract in writing. Express. Express contract. Apologize, Your Honor. Yes, express contract. Or else if not, like you said, it would fall back and just say under the circumstances was this unjust enrichment. Why isn't that more appealing though? Why isn't that more fair, let's say? I'm not saying it's easier for a plaintiff to establish their claim under that circumstance. I don't disagree with the court. It would be easier. The question is, is it in the interest of the law to allow for that circumstance where you do have an express contract? And I think that's where the development of the restatement sections and the case law has developed that there has to be, if you're going to have an exception to the general rule, then the exception has to have a certain standard that's a little stricter or assumes what's stricter than general unjust enrichment standard. And that would be my general position. Now, of course, the facts in Hayes are distinguishable and Midcoast Aviation are distinguishable from the facts in our case here. Obviously, you know, in Hayes there was no contact really between the owner and the contractor. And in Midcoast Aviation there was a contract and there was enticement and a promise of payment. So those facts really distinguish those cases from our particular situation. Well, I think that the key is the enticement and the inducement. And in the trial court's decision, the judge, French Merrill, indicated that she found, what I found, that she spoke that they did not induce them, they didn't promise payment. But they encouraged them. She did say the word encouragement. Right. She does use that word encouragement. Right. And that's where I would ask the court if they believe that she applied the correct standard and not just a general unjust enrichment standard, which I think, although she discusses about the exception, et cetera, in her ruling, toward the end she says, well, I'm not going to necessarily consider that. I'm paraphrasing. But I'm just going to go, was it unjust? Was it unfair? And that's where we believe an error of law was made. But to the extent that the court feels Judge Merrill did, Judge French Merrill did apply the standard of at what point did they induce them or encourage them, I would ask the court to consider the Mike Glenn and company case where they had to determine at what point did that occur. Well, but didn't her decision also reflect some of the exceptions talked about in Section 25 of the restatement? Above the nonpayment, et cetera. Right. She does. And then that's, again, if the court feels that that is an applicable standard. And the weight of authority. Then I would ask that they consider the Congress Partnership 898 LTD where that also required that the plaintiff exhaust the remedies, in particular against the party that they had an express contract with, didn't necessarily go into the issue of bond and mechanic liens. But I think there's a certain form of public policy that there's a reason why there are mechanic lien laws. There's a reason why there are bond laws. It's to protect parties in situations like this. Again, as the judge indicated, if you go with this broad standard, then you don't need mechanic lien laws. Well, not that you don't need them, but it just, there's a reason why it's an exception to the rule if it's our position. Thank you. I have one question. Yes. Did the same people work for both JLA and ZABA? My understanding, based on the testimony, again, JLA and SONS had people out. Some of the same people worked for JLA and SONS as worked for JLA Construction, Inc. Did they know it was ZABA because ZABA had the union? Right. The union contract. The union people. Yes. Well, that's their testimony. That's the testimony. Yeah, evidence that I submitted shows that they didn't have the union contract until March 20th. So my position would be they couldn't have done the work prior to March 20th because they were in union. And you're right. Some of the people from what I could say, JLA, because JLA and SONS and JLA Construction, although JLA Construction was a separate legal entity, there really was no knowledge of that, at least spoken knowledge, known knowledge, but until March 20th, around March 20th, when the owner and president of JLA and SONS became aware that there was a separate account, et cetera, and that's when separate litigation began and that was resolved separately. But then you're correct. It seems like a subcontract was entered on March 22nd, I believe, of 2007 between CZABLE Contracting and JLA Construction, and to answer your question a little more clearly based on testimony, I believe that some of the workers that worked with JLA and SONS slash JLA Construction did go to CZABLE Contracting. Not all, but some. Thank you. Okay. Okay. You'll have time on rebuttal. Okay. Thank you. All right. Thank you, Ms. Parks. Good morning. Good morning. If you wouldn't mind starting out also with addressing the restatement, the two sections, and whether you believe they're instructive for this court and how and whether they support your position. Thank you. For the record, Your Honor, I'm Lauren Parks representing the FLE. I believe that both restatements support the position of my client. I see the first restatement as kind of almost a negative statement of unjust enrichment. It merely states that you have to show something more than that the defendant was benefited, but it doesn't really clarify what exactly you have to show. Some indefinite point in addition to that must be demonstrated. The third restatement, Section 25 of the third restatement, definitely goes more into detail and I think is directly in line with our case law, in our case, as well as much of the case law that Your Honor has mentioned regarding other states, and that all you have to do is show that the defendant is not subject to a forced exchange, which I think in our case there's no question that they aren't subject to a forced exchange. They did contract for this pipe jacking work. They wanted it performed. They expressed a willingness to pay someone for it, although they did not, and then demonstrate that the defendant has not paid. I will point out that an Illinois payment is an affirmative defense, and the defendant in this case voluntarily dismissed their affirmative defense of payment. And there was, I think the trial court ruled that there was no credible evidence to demonstrate payment in this case. So I think we've met that factor. And then to also show that the defendant's liability is not contractually limited, and I don't think there's any question of that in this instance. Also, the third restatement I think is very helpful if you look at the illustrations. There's an illustration, I think it's number 15, mentioned in the third restatement, section 25, which is exactly on point and which talks about if an owner contracts with a general contractor, A, who then subcontracts with a subcontractor, B. This gets kind of tedious. And then there's a sub-subcontractor, C. If the owner pays the general contractor, which would be Lorig in our case, and then Lorig fails to pay either the subcontractor or sub-subcontractor, the restatement says that C, the sub-subcontractor, Czabo, has a claim against A. And also in the reporter's note for the third restatement, they state that in a case from which the issues of payment and valuation may be eliminated, which is a claim against a defendant who stands to retain the performance for which he contracted, and without paying anybody for it, denial of restitution today is a distinct remedy. Well, we could adopt that, but what about his argument that there should be some limitations? Because, as you know, here before Illinois has held generally that unless you have a privilege or unless you have an express contract, you don't get quasi-contract remedies. That's the general rule. What about his argument about, well, we should have some limitation, like maybe exhaustion of remedies? Why should we just totally go from one extreme to the other in saying a just enrichment should apply in every case? Well, Your Honor, I think part of the reason why a just enrichment is limited at times is there's a concern that you are going to bestow an unwanted benefit on the defendant. You know, the homeowner didn't want his lawn mowed. You went out and did it, and then you come calling it with an open pump, and you want to be paid. This is not that situation. Lori contracted to have this work done. It had to have the work done. Lori was under an independent contractual duty to the Illinois State Toll Highway Authority to do this work. And if it didn't do it, it would have breached its own contract. But it didn't have a contractual arrangement with Zabo. We know that. No, it didn't. No. So what I'm saying, why couldn't we engraft a remedy where subcontractor would have to exhaust the remedies? And the other looming question here that's been hanging in the air since we came out here is, why didn't Zabo sue the party that it was appropriate to? Well, it's a bit of a difficult, complicated answer, Your Honor, in part because I don't think it really came out in the record. I think we did see in the record that C. Zabo Contracting and JLA Construction, they're both family businesses. They have the same people involved as officers in both. Carl Zabo, who testified, was aware that JLA Construction had not been paid. So in part it would have been a moot point. It would have been suing a sister company, in effect, where they knew the sister company had no monies to pay. So the family connection has something to do with it, which is what we've heard so much. I mean, perhaps if Your Honor is interested in having a requirement that there has to be an exhaustion of remedies, I think it should be limited to the point that that will have any kind of effect. If it's clear on the face of it that this will be just a superfluous cause of action. So even if we had it here, in this case it wouldn't be applicable. Because we knew that JLA Construction had not been paid. This was not, I don't think there's ever been any contention that there was a question as to whether they had been paid. Everyone knew they had not been paid. No, your opponent talks about the date and the timing in which Zabo starts the work, or the time when they knew Zabo was starting the work, but there was work performed prior to that date. How do you respond to that? Well, my recollection of Carl Zabo's testimony on this issue was that he had been having conversations with Walter Simpson from LORIG, in which LORIG told them, we're going to need you to get out there and do the work. He was doing work in anticipation of the sub-subcontract agreement or the assignment of the pipe jacking work. And because of Walter Simpson's representations, these are actually in line with LORIG's argument that unjust enrichment is available where there is encouragement to perform the work. And that's why Carl Zabo got his people out there to prepare the site. He said, I don't care how it gets done, just get it done or something. Exactly. Did I fully answer your question? So just very briefly, our contention is that both the Illinois case law on the subject of unjust enrichment supports our case, as well as the nationwide trending case law, which is evidenced by the out-of-state cases Your Honor has mentioned, as well as the first and third risk statements. And finally, I think even within LORIG's very limited view of unjust enrichment, we have established at trial that we performed in reliance on the encouragement that was given to us by LORIG. Obviously, this occurred prior to performance. So this fits squarely within the definition that LORIG has posited. And I think that Illinois to date has not, there's not a lot of case law on this topic, certainly. But I do think Illinois has adopted the three-prong test that we see repeated over and over again in many states, in which to have unjust enrichment, we're looking at general equitable principles, and we're looking for a benefit rendered, a benefit received, and some additional circumstances that would render the retention of the benefit without compensation unjust. And Illinois has not limited the situations in where we can make such a finding. I cited to the case, I'm sorry, I don't want to hit you. No, well, I'm a little bit puzzled because you had said Illinois case law supports your position, and I think you're elaborating on that. But I don't think Illinois has adopted the two exceptions. Any case in Illinois has adopted these two exceptions, have they? I was only indicating that in Midcoast Aviation and also in Hayes Mechanical, they cite to the three-prong test where you have to show a benefit rendered, received, and then some additional circumstances. Perhaps three-prong is a misleading term to say. But I cited to the case of Woodfield Lanes in my brief. In that case, the village of Schaumburg was found to have been unjustly enriched because they failed to comply with an independent duty. In that case, it was the fact that they had failed to abide by their own ordinance. I think in this case we could draw a parallel and say that LORG failed to comply with its duty to pay JLA construction. It failed in an independent contractual duty. But there was no express contract in Woodfield Lanes, though. No, that's a distinguishable case. It is, but in fact, I think that the Woodfield Lanes case was seen unjust enrichment very broadly. They were, in fact, saying, village of Schaumburg, you created this ordinance for yourself, and then you didn't even have a contract with anyone, but you failed to abide by your own ordinance, and therefore your conduct is unjust. It was a very broad construction of unjust enrichment in my mind. In Swansea, we had a situation where the homeowners directly contacted the subcontractors after the subcontractors completed their performance. Although the court did not dwell upon it in that case, if you look at the timeline, the subcontractors performed their last delivery of materials on the day that the homeowners took over the general contracting work and started reaching out to them in that capacity. Was that a quasi-contract claim in that case? It was promissory estoppel. I think they were raising the question of whether equitable relief is available in that situation. So, yes, it is distinguishable on that basis, but I think it is informative that the court wasn't actually very concerned about the timeline as to when this contact occurred. Of course, in our case, we have testimony that we were contacted prior to performance, that we were sending pay requests directly to LORIG throughout the course of performance, so LORIG at all times knew that we were performing the work and that we were requesting payment from LORIG. And then after we were done with the work, in fact, LORIG contacted us and said, Hey, in order for us to get our payment from the Illinois State Toll Highway Authority, we need your help. Can you give us more detail about the pipe-shacking work that you performed? Acknowledging that they knew Cizabo was the one who was doing this work. And, in fact, we helped them get their payment. But the knowledge that Cizabo performed the work, that LORIG's knowledge that Cizabo performed the work isn't enough, however, to permit Cizabo to pursue this quasi-contract claim. No, but I think many cases point to the fact that if the defendant knows that the plaintiff is looking to them for payment, that is enough to render their retention of the benefit without payment unjust. And I think in our case, the fact that we were sending them pay requests, we were faxing them requests for payment, lien waivers, we had a fair amount of communication. There was also testimony by David LORIG that he received phone calls requesting payment as well, although I don't think we had a specific date or timeline for those. So there was quite a bit of direct contact in this instance. This isn't a situation where LORIG didn't even realize this was happening or that we were out there performing. They at all times knew that we were, and they knew that we were going to come for payment and that we wanted to be paid. But then when we asked for our payment and months and months went by, their excuse was, well, we don't have a contract with you. And I think that that fits squarely within case law, definitely within the third restatement, Section 25, the illustrations that I mentioned as well as the reporter's note that I cited. And as Your Honor mentioned, this would be an unexpected windfall for LORIG if they were allowed to retain this work. It was work that allowed them to get a $40 million check cut from the Illinois State Toll Highway Authority. So they made a substantial amount of money off of this, and our work was part of it. It was underground work. It had to be performed, and then the rest of the work was built upon it literally. So we were integral in this process, and it's not, it would be unjust for them to retain the benefit without compensating for it. I'd be happy to, I don't want to. Thank you very much, Your Honor. Mr. Cervantes? I just think, Your Honor, so again, Pedro Cervantes for the appellant. I think the primary issue here is, as we know, we're not arguing the facts at this point. We're arguing, my position is that the trial court made an error in the decision after the trial on the merits in applying the improper standard of law. If this court were to determine that a different standard applies and submits it back down to the trial court, then I think the trial court could then apply the facts from the trial to that standard. Again, our standard. Another one, again, the trial court did have a general discussion about the exceptions, but I think it's important to note that she did say, and again, I'm paraphrasing something to the effect of, well, I'm not going to consider that so much as more just an issue of was this unjust, was this inequitable. And I think that's where the error was, is that in the ruling, her mindset was, let's apply this general standard of fairness, equity, and I think that- Can we still, even if we find that she applied it, that improper legal standard, can we still affirm her on other grounds? Well, Your Honor, I think it would depend on what standard, and that's where I'm a little bit, I'm not certain what standard the court would apply. If I knew that, then I could make a better argument. Well, I mean, what if we found that she used the improper standard, but we find that it could be affirmed on unjust enrichment, or a different theory? I mean, we can affirm her on any basis, can't we? We can't reverse her on any basis, but we can affirm her on any basis. Why do you think we have to remand it, should we disagree with you? Because there would be an error of the application of law, and I'm not certain what, I guess I would ask, what would be the basis for affirming it under what other theory, if I could ask? Well, it could be the quasi-contrary. I think what she's trying to say is that we affirm the judgment or decision of the trial court, not its reasoning. If it arrived at what we perceived to be the correct result, even if its reasoning was flawed, we could still affirm the judgment, could we not? It would be my position that it's the position of the appellate court to determine what proper standards are for not only this case, but for future litigants to determine what they need to, how they need to proceed in a case similar to this. If not, we'd be in the same position that we were before as far as case law. Wasn't it our job to come up with the right result? I mean, I think the job, again, my position would be the job of the appellate court is to determine what is the correct standard of law. Not so much to apply the facts and make a decision. I guess the primary factor, primary matter for the appellate court, in my opinion, is that it needs to determine what the correct application of law was. It's the trial court's, generally the trial court's position to apply the facts, consider testimony, et cetera, and then apply it to the correct standard of law. I think the primary argument that I'm making is that the trial court judge made an error in applying the law by applying it too broad of a standard under the circumstances where there is an express contract. So that's my primary position. And then I know the court did bring up some issues about, well, if there's simply nonpayment, would that be enough? And I think that if the court were to apply that as a standard, I would ask that they consider also the fact that a party would need to exhaust their remedies. I know there's some, perhaps or maybe some exceptions to that, but at this point I think that that would need to be a standard and then it would be up to the trial court to determine whether they feel there's an exception to that standard. And as in some of the cases that you asked me to review or asked us to review, there were cases where there were consent judgments entered. They had an opportunity, although they chose not to directly file a lawsuit against J.I. Construction, they certainly could have entered a consent judgment, and that would have said, well, okay, now we have a, just in case, what if LORC didn't have it, what if LORC would have paid J.I. Construction? And then they could have pursued J.I. Construction. I know that's not a factor here. Yeah, but I mean, as she says, as your opponent says, it's basically an exercise of futility. They wanted the same. They knew they weren't paid. And there's a reason. So why go through all of that? And there's a reason why. But also there's a reason why J.I. Construction did not get paid by LORC because LORC had a valid legal reason not to pay. J.I. Construction, and perhaps that's the reason why they voluntarily dismissed not only the breach of contract, but also the claim of merit on behalf of J.I. Construction. So, unfortunately, we didn't have the opportunity to pursue our defense against that claim by saying that you assigned all your rights and obligations to J.I. and Sons, which was our position, because they chose not to pursue the claim on behalf of J.I. Construction, which the trial court judge, French Manon, even said it would have been a lot easier had they, in theory, if J.I. Construction Inc. had a right to pursue a claim against LORC Construction, it would have been much easier for them simply to pursue the breach of contract claim. Certainly, there's a reason why they didn't do that. And we don't necessarily know why they didn't fail, but it's our position that there was a valid legal basis for LORC not to pay J.I. Construction. So, again, to the extent that I would ask the court to find that there was an error in the application of law by the trial court, that the incorrect standard under these circumstances is applied, to the extent the court applies the standard of at what point the contractor induced or encouraged the party to believe they would be paid, I would ask that they find that, remand back to the court to determine at what point that was, and any work prior to that not be part of the consideration, or to the extent that it's simply an issue of nonpayment to anyone, I would ask that they consider the requirement that there also be an exhaustion of remedies. Thank you. And at this time, I thank you both, counsel, for your arguments. The court will take the matter under advisement and render a decision in due course. We stand in recess until the last case.